FILED

OCT 04 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| APL CO. PTE. LTD., | No. 11-18065 |
| Plaintiff - Appellee, | D.C. No. 3:09-cv-05641-MHP |
| v. | |
| VALLEY FORGE INSURANCE COMPANY, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Marilyn H. Patel, Senior District Judge, Presiding

Argued and Submitted September 10, 2013
San Francisco, California

Before: WALLACE, THOMAS, and BYBEE, Circuit Judges.

Valley Forge Insurance Company ("Valley Forge") appeals from the district

court's summary judgment against it on a diversity insurance coverage action filed

by APL Co. Pte. Ltd. ("APL"). We reverse. Because the parties are familiar with

the history of the case, we need not recount it in detail here.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

The question in this case is whether Valley Forge is obligated to pay a judgment obtained by APL against Valley Forge's insured, U.G. Co. Inc. ("U.G."). Through its purchasing agent Kamdar Global, LLC ("Kamdar"), U.G. had ordered hair spray and mousse products from U.K. Aerosols. APL shipped the product from Istanbul, Turkey to California. The product leaked from the shipping containers, causing APL damage.

APL filed suit against U.G., Kamdar, and U.K. Aerosols on contract and negligence theories. The district court granted summary judgment against APL on the negligence theories, but granted summary judgment for APL for $733,963.10 on the contract theories. The district court denied an attorney fee award. Both parties appealed. We affirmed the summary judgment to APL on the contract claims, and reversed the district court's denial of APL's request for attorneys' fees.[1] *APL Co. Pte. Ltd. v. UK Aerosols Ltd.*, 582 F.3d 947, 958 (9th Cir. 2009).

Subsequently, APL filed the instant action against Valley Forge to collect the judgment. Valley Forge claims the contractual liability exclusion in the insurance contract precludes coverage. APL argues that the "insured contract" exception to the contractual liability exclusion applies to extend coverage.

---

[1]In 2011 on remand, the district court awarded APL attorneys' fees and costs in the amount of $735,374.08. That ruling is the subject of related appeal 11-15414.

By its terms, the contractual liability exclusion applies. The insurance policy excludes coverage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Because the underlying judgment was founded on contract liability, the exclusion operates to preclude coverage.

However, the policy provides for an exception to the contractual liability exclusion for "liability for damages . . . [a]ssumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement." The policy defines an "insured contract" as:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

APL contends that the Bill of Lading upon which the contractual liability was predicated constitutes an "insured contract" on the basis of Clause 9, which states:

> If a Container has not been filled, packed, stuffed or loaded by the Carrier, the Carrier shall not be liable for loss of or damage to the Goods and the Merchant shall indemnify the Carrier against any loss, damage, liability or expense incurred by the Carrier, if such loss, damage, liability or expense has been caused by:

-3-

a. the manner in which the Container has been filled, packed, stuffed or loaded; or

b. the unsuitability of the Goods for Carriage in Container . . . .

Put in the terms of this transaction, Clause 9 provided that if APL did not fill, pack, stuff, or load the container, U.G. would indemnify APL for damages caused to it by the manner in which the container was filled, packed, stuffed, or loaded by other parties. Thus, APL reasons, because UK Aerosols prepared the container for shipment and was liable for the damages and U.G. agreed in Clause 9 to indemnify APL for any damage caused by leakage, the Bill of Lading was therefore an "insured contract."

APL's construction is at odds with the plain language of the "insured contract" exception. The "insured contract" exception applies if the insured has assumed a contracting party's tort liability against a third party. "[T]he insured must assume the other contracting party's tort liability to third parties in order for insured contract coverage to attach." *Golden Eagle Ins. Co. v. Ins. Co. of the W.*, 99 Cal. App. 4th 837, 847 (Cal. Ct. App. 2002) (internal quotation marks omitted). In other words, when it applies, the "insured contract" exception protects the contracting party from liability for suits filed by a third party; it does not cover the reverse situation when the contracting party's own damages are caused by a third

-4-

party. *VBF, Inc. v. Chubb Group of Ins. Cos.*, 263 F.3d 1226, 1232 (10th Cir. 2001); *see also Whittier Props., Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84, 93 (Alaska 2008) ("The assumption-of-liability exception does not apply because the [contracting party] is not being sued."). If APL's interpretation was credited, the exception would swallow the contractual liability exclusion, and transform all routine indemnification agreements into insurance contracts.

Here, U.G. contractually agreed to indemnify APL for damage it sustained when third parties packed the container. U.G. did not agree to indemnify APL for APL's tort liability to third parties, so the "insured contract" exception was not triggered in the first instance. The Bill of Lading plainly did not constitute an "insured contract" within the meaning of the exclusion. An "insured contract" concerns the liability *of* the contracting party; the Bill of Lading provided a basis for contractual liability *to* the contracting party. And, even if the exception were triggered, the exception would not apply because APL suffered damages at the hands of a third party; it did not incur tort liability to a third party.

Because the contractual liability exclusion applies, Valley Forge has no liability to APL under the U.G. insurance contract. The judgment of the district court is reversed. Given this result, we need not–and do not–reach any other issue urged by the parties.

**REVERSED.**